IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| THOMAS AVERY ALLEN, JR., ) | |
| ) | |
| Petitioner, ) | |
| ) | 1:11CV1082 |
| v. ) | 1:07CR409-2 |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE

Petitioner Thomas Avery Allen, Jr., a federal prisoner, filed a Motion [Doc. #120] to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. On July 18, 2008, a jury convicted Petitioner of one count of distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) (Count Three), one count of distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) (Count Five), and one count of distribution of cocaine hydrochloride in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Count Six). He was later sentenced to 360 months imprisonment as a career offender under USSG § 4B1.1. Following an unsuccessful direct appeal, Petitioner filed his present Motion, in which he raised several possible claims for relief, including a claim that he received ineffective assistance of counsel because his attorney failed to seek out a plea bargain that would have allowed him to receive a lower sentence, as well as a claim that he received ineffective assistance of counsel because his attorney failed to explain the meaning and implication of sentencing enhancements so that he could be informed as to whether it was in his best interest to enter a plea. In his supporting

memorandum, Petitioner argued that he relied on the "presented facts of counsel that a trial or plea would bring about the same sentencing range," and therefore persisted in a plea of not guilty. (Mem. [Doc. #121-2] at 3.) As part of the Government's Response, Petitioner's former counsel submitted an affidavit stating that the Government made two plea offers and that counsel explained the offers and the Sentencing Guidelines to Petitioner, but that Petitioner insisted on going to trial. (Aff. [Doc. #132-1].) In his Reply, Petitioner alleged that he was never provided with a physical copy of the plea offers and that counsel did not accurately explain or review the offers with him.

Based on the parties' submissions, the Court held an evidentiary hearing on this claim. Both Petitioner and his former attorney ("Trial Counsel") testified at the hearing, with Petitioner taking the witness stand first. Petitioner testified on direct examination that Trial Counsel visited him twice and that on at least one occasion he mentioned a plea offer, but did not "[break] it down," did not tell Petitioner that it would be in his best interest to take it, and did not show him a written copy of the offer. (Evid. Hrg. Tr. [Doc. #188] at 7.) As far as the prospects of winning at trial, Petitioner informed Trial Counsel that his brother and co-defendant, Tamarius Allen, was going to testify on Petitioner's behalf. According to Petitioner, Trial Counsel responded that he might have a "good chance" in that case. (Id. at 8.)

Petitioner further testified that Trial Counsel did not explain that he would be a career offender under the United States Sentencing Guidelines, did not review the Guidelines to show Petitioner where his sentence would likely be, did not explain that the Government had filed an enhancement increasing the statutory mandatory minimum sentence, and did not tell

2

him that the enhancement would be withdrawn under a guilty plea. (Id.) Finally, Petitioner testified that Trial Counsel never advised him that he should accept the plea offer. (Id.)

On cross examination, Petitioner stated that he was initially appointed a different attorney, and that his first attorney had reviewed the potential evidence, including videotapes, with him. That attorney withdrew early in the case due to a conflict of interest, and Trial Counsel was appointed.[1] Petitioner initially stated that he never heard the term "career offender" from his attorneys, but then explained that he did not understand the term prior to his trial. (Id. at 9-10.) Petitioner testified that Trial Counsel also reviewed the evidence in the case with him. At that time, Petitioner intended to go to trial and expected his brother to testify on his behalf. Petitioner said that he sought to have Trial Counsel file a motion to allow his brother to testify, but no such motion was filed.[2] (Id. at 11-12.)

Petitioner further testified that neither attorney explained to him that he would likely receive a 30-year sentence if he proceeded to trial but that he could receive a three-level reduction for acceptance of responsibility under the Guidelines, as well as other benefits, if he pled guilty. (Id. at 13-14.) Petitioner testified that he would have pled guilty if he knew he could have received a lesser sentence. (Id. at 13.) He also admitted that he was selling drugs on the day in question. (Id. at 11, 14.) However, his answers as to which of the three counts he would have been willing to plead to were unclear. Petitioner appeared not to appreciate

---

[1] Petitioner's first counsel moved to withdraw due to a conflict of interest, since he was also representing Petitioner's father on similar state charges that potentially implicated Petitioner. Two other attorneys were appointed in sequence, but each withdrew immediately due to their own conflict issues [Doc. #41, #42, #47, #48], and there is no indication that either of them had any interaction with Petitioner.

[2] Based on other documents in the case, it appears that Petitioner was speaking of a potential motion to sever his brother's case.

3

the distinction between the three charges against him and did not recall Trial Counsel discussing concepts like aiding and abetting and acting in concert. (Id. at 13-15, 28.) He insisted that he never saw a paper copy of any plea offer from the Government. He testified that his attorney did mention a 20-year offer and a 5 to 40-year offer, but he did not understand them at the time. (Id. at 16, 18-19, 27-28.)

With respect to Petitioner's brother/co-defendant, Petitioner testified that during the trial preparations, he remained convinced that his brother was going to testify and would state that Petitioner did not sell to the undercover officer on the day in question. (Id. at 26-27.) However, the sale to the undercover officer formed the basis for only Count Three of the Indictment. As to that Count, the eventual testimony of the officer at trial showed that Petitioner was not the person who actually handled the drugs and gave them to the undercover officer. However, the evidence indicated that Petitioner was present when the undercover officer arrived and that Petitioner possessed some of the buy money after the sale. (Trial Tr., Vol. 2. [Doc. #94] at 53, 124, 126-27, 133, 146.) The evidence also reflected other drug transactions that formed the basis for the other Counts against Petitioner.

At the evidentiary hearing, the Government then called Petitioner's Trial Counsel to the stand. Trial Counsel testified that he had a total of 30 years of experience practicing law and that he had fourteen or fifteen years of experience in federal court at the time he represented Petitioner. (Evid. Hrg. Tr. at 29.) He stated that in preparing for a case, he generally looks at the indictment and then determines the maximum penalties and his client's criminal history in order to give them an idea of what will happen "depending on what route they want to take." (Id. at 30.) Upon his appointment in the present case, Trial Counsel did

4

not speak with Petitioner's first attorney, but instead started with "a clean slate." (Id. at 30-31.) He reviewed the discovery and went to talk to Petitioner "within a couple of weeks" after he was appointed, with the understanding that the case was probably going to trial.[3] He testified that he also discussed the first plea offer with Petitioner, which would have allowed Petitioner to plead Guilty to Count Five of the Indictment, and that he told Petitioner about the concept of acceptance of responsibility. (Id. at 31-33.) With respect to that conversation, Trial Counsel testified that Petitioner "was not interested in that plea. I had talked to him, and I said, look, really the bottom line is it wasn't going to make that much of a difference in reduction in the sentence under his situation. Given he was a career offender, a three-level reduction, I could understand why he wanted to go to trial at that point." (Id. at 33.) This is consistent with Trial Counsel's Affidavit, in which Trial Counsel asserted that during his first meeting with Petitioner, "I told him I appreciated his situation about trying the case since a three-level reduction in the offense level, given his criminal history, would afford little reduction in this sentence." (Aff. [Doc. #132-1] at 3.) Trial Counsel testified that he did not give Petitioner an exact number, but informed him that he would get a lot of time and up to life imprisonment if he went to trial and lost. Regarding prospects at trial and the discovery materials from the Government, Trial Counsel said that with respect to his assessment of the evidence, he told Petitioner "[r]eally just that I don't know." (Evid. Hrg. Tr. at 33.) Trial Counsel saw some avenues to exclude portions of the evidence, but concluded that "it didn't look good." (Id.) However, Trial Counsel also testified that "after discussing this and what

---

[3] Trial Counsel testified that he "was already told this case was intended to be for trial, my understanding was," but at that time Trial Counsel had not met with Petitioner or talked to prior counsel, so it is not clear from the record where he got this understanding. (Evid. Hrg. Tr. at 31, 42.)

5

the first plea was, I didn't blame him for going to trial. It was worth a roll of the dice at that point." (Id. at 40.)

Later, Trial Counsel received a second plea offer from the Government. That offer would have allowed Petitioner to plead to Count Three of the Indictment, and the Government would have withdrawn the Information of Prior Conviction, thereby subjecting Petitioner to a statutory sentencing range of five to forty years imprisonment. (Id. at 35.) Trial Counsel testified on direct examination that he presented the offer to Petitioner and explained it to him, and that Petitioner "indicated some surprise that [the Government] had extended a better offer; but after all was said and done, he declined [the] offer." (Id. at 36.) Trial Counsel testified that Petitioner continued to expect that his brother would testify and take responsibility, but this did not occur. (Id. at 39.)

On cross examination, Trial Counsel stated that he read over the second plea offer with Petitioner, but was not sure if he left a copy with him. (Id.) He also testified that he advised Petitioner regarding the second offer that after going through the potential sentencing numbers "the numbers weren't going to be that much different." (Id. at 40.) Therefore, according to Trial Counsel, when Petitioner stated that he expected his brother to testify, Trial Counsel "agreed he wasn't going to get much of a benefit out of any plea bargain," and did not attempt to persuade Petitioner to accept the plea offer. (Id. at 40-41.) In an affidavit filed earlier with the Court, Trial Counsel's former office manager stated that Petitioner called Trial Counsel's office after this second meeting and reiterated that he wanted to make sure Trial Counsel knew he was not going to accept the second plea offer because if he was going to get 30 years imprisonment with the plea, he might as well take his chances at trial since he would

6

be in his 60s when released and unable to support himself. (Government Response [Doc. #132], Ex. 1.) When questioned at the evidentiary hearing about that occurrence, Trial Counsel confirmed that Petitioner said at the time that if he was going to get around 30 years, he might as well take his chances and go to trial, and Trial Counsel further affirmed that it was his understanding that Petitioner's Guideline range would still be around 30 years whether he pled guilty or went to trial, even under the second plea agreement. (Evid. Hrg. Tr. at 43-44.)

Following the testimony at the evidentiary hearing, the parties presented short arguments on some of the issues in the case, but the Court also allowed post-hearing briefing. There was also discussion, which is supported by Petitioner's Presentence Report (PSR) and the United States Sentencing Guidelines, that Petitioner faced a Guidelines sentencing range of 360 months to life in prison if he went to trial and lost, a range of 262 to 327 months if he accepted the first plea offer and received a three-level reduction for acceptance of responsibility, and a range of 188 to 235 months if he accepted the second plea offer and received the same three-level reduction. Also discussed was the fact that based on the evidence at trial, any testimony by Petitioner's brother was unlikely to help him at all, and even if he had testified, it could only have potentially helped Petitioner as to Count Three of the Indictment and not Counts Five and Six. Petitioner's conduct in committing those offenses was captured on videotape and/or witnessed by law enforcement officers. Count Five was the most serious of the three counts because it carried the highest statutory penalty and moved the career offender range into the highest category under the Guidelines. Petitioner faced a Guidelines range of 360 months to life even if convicted only of that count at trial.

7

The United States Supreme Court held in Missouri v. Frye, 566 U.S. 134 (2012), that defense counsel must inform defendants of plea offers made by the Government. On the same day, in Lafler v. Cooper, 566 U.S. 156 (2012), the Court stated that:

> Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process. Frye, ante, at 1386 – 1387, 132 S.Ct. 1399; see also Padilla v. Kentucky, 559 U.S. ——, ——, 130 S.Ct. 1473, 1486, 176 L.Ed.2d 284 (2010); Hill, supra, at 57, 106 S.Ct. 366. During plea negotiations defendants are "entitled to the effective assistance of competent counsel." McMann v. Richardson, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). In Hill, the Court held "the two-part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of counsel." 474 U.S., at 58, 106 S.Ct. 366. The performance prong of Strickland requires a defendant to show "'that counsel's representation fell below an objective standard of reasonableness.'" 474 U.S., at 57, 106 S.Ct. 366 (quoting Strickland, 466 U.S., at 688, 104 S.Ct. 2052). . . . To establish Strickland prejudice a defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id., at 694, 104 S.Ct. 2052. In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice. See Frye, ante, at 1388 – 1389, 132 S.Ct. 1399 (noting that Strickland's inquiry, as applied to advice with respect to plea bargains, turns on "whether 'the result of the proceeding would have been different' " (quoting Strickland, supra, at 694, 104 S.Ct. 2052)); see also Hill, 474 U.S., at 59, 106 S.Ct. 366 ("The . . . 'prejudice,' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process"). . . . In contrast to Hill, here the ineffective advice led not to an offer's acceptance but to its rejection. Having to stand trial, not choosing to waive it, is the prejudice alleged. In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

Lafler, 566 U.S. at 162-164.

Here, Petitioner's argument following the evidentiary hearing is that Trial Counsel provided representation that fell below an objective standard of reasonableness when he failed

8

to advise Petitioner of the possible impact of the proffered plea offers on his eventual sentence and failed to weigh those plea offers against the likely outcome at trial and any sentence following an unsuccessful trial. In short, Petitioner claims that Trial Counsel misadvised him by telling him that the plea offers would not make much difference in his sentence, by telling him that he faced about 30 years either way, and by telling him that he might as well take his chances at trial and hope that his brother could provide helpful testimony. In fact, the first plea offer reduced the sentencing range under the Guidelines by 98 months (over 8 years) at the lower end of the range, and the second plea offer reduced the Guidelines range by 172 months (over 14 years) on the lower end. Further, Petitioner's brother was unlikely to testify at trial and could potentially help him on only one of the three pending charges. Petitioner had no defense as to the most serious charge, Count Five, which was also the charge controlling the eventual sentence following trial.

In its brief following the hearing, the Government does not contend that Petitioner cannot satisfy the deficient performance prong under Strickland in light of the testimony at the evidentiary hearing and the evidence in the record. See also United States v. Carthorne, __ F.3d __, 2017 WL 6521302 at *5 (4th Cir. 2017) (noting that under the first prong of Strickland regarding prevailing professional norms and duties, counsel's duties "include the duty to investigate and to research a client's case in a manner sufficient to support informed legal judgments."); United States v. Gordon, 156 F.3d 376 (2d Cir. 1998); United States v. Day, 969 F.2d 39, 44 (3d Cir. 1992). Instead, the Government argues at length that Petitioner failed to produce sufficient evidence to show that he suffered any prejudice, i.e., that he would have

9

accepted either of the plea offers even if they were fully and completely explained to him.[4] In light of this presentation and the evidence in the record, the Court set the matter for a status conference, and at the status conference the Court provided the Government and Petitioner's current counsel with a draft copy of the present Recommendation, noting the Court's concerns in this case. The Court then allowed the Government the opportunity to file a further supplemental brief addressing any issues – legal or factual – that might affect Petitioner's claim to relief in this case, and also addressing the appropriate remedy if relief were granted. In response, the Government filed a Supplemental Brief, again arguing only that Petitioner failed to produce sufficient evidence to show that he suffered any prejudice. Thus, the Government does not contend that Petitioner was not misadvised regarding the effect of the plea offers, nor does the Government contend that the misadvice would not satisfy the first prong of Strickland. Instead, the Government contends only that Petitioner has not shown prejudice because he has not shown that he would have accepted either of the plea offers even if they were fully and completely explained to him.

As to the prejudice prong of the Strickland analysis in a plea bargaining situation, the United States Court of Appeals for the Fourth Circuit observed:

> What exactly Frye and Lafler require of a petitioner to demonstrate prejudice is not clear at this time. The Sixth Circuit has adopted the view that a petitioner's own credible testimony that he would have accepted a plea offer combined with a disparity between the sentence offered and the sentence actually received establishes a reasonable probability that the petitioner would have accepted the plea. See, e.g., Smith v. United States, 348 F.3d 545, 551–52 (6th Cir.2003); see also Titlow v. Burt, 680 F.3d 577, 588–89 (6th Cir.2012), petition for cert. filed, No. 12–414 (U.S. Oct. 2, 2012). The Seventh Circuit requires a petitioner to

---

[4] The Government's Brief also does not argue that the case turns on any of the other factors set out in Lafler. That is, it does not assert that it would have withdrawn the plea offers, that the Court would not have accepted them, or that Petitioner's eventual sentence would not likely have been lowered by the plea agreements if completed.

10

Case 1:07-cr-00409-WO Document 199 Filed 01/16/18 Page 10 of 20

> offer "objective evidence" that establishes a reasonable probability of acceptance. See, e.g., Toro v. Fairman, 940 F.2d 1065, 1068 (7th Cir.1991). The Supreme Court has not yet resolved what, if anything, a petitioner must show in addition to his own credible post hoc testimony and a sentence disparity to satisfy the Strickland prejudice prong. Cf. Frye, 132 S.Ct. at 1411.
>
> But it is entirely clear that to demonstrate a reasonable probability that he would have accepted a plea, a petitioner's testimony that he would have done so must be credible.

Merzbacher v. Shearin, 706 F.3d 356, 366-67 (4th Cir. 2013).

The Government maintains that Petitioner failed to establish that he would have accepted any plea offer. It points to pretrial statements made by Petitioner that he intended to go to trial, a statement made in a *pro se* sentencing filing stating that he was not guilty, an affidavit he submitted from his brother as part of his § 2255 Motion stating that Petitioner did not have knowledge of any drug distribution, and both Petitioner's and Trial Counsel's testimony at the evidentiary hearing that Petitioner believed prior to trial that his brother was going to testify on his behalf at trial.

In response, Petitioner's current attorney points to Petitioner's testimony at the evidentiary hearing that he only wanted to go to trial because Trial Counsel never told him he didn't have a chance at trial and because Trial Counsel did not explain that he faced a reduced sentence if he accepted the plea offer. Petitioner's current attorney also points to Petitioner's pretrial call to Trial Counsel's former office manager in which Petitioner stated that he was rejecting the second plea offer because, if he was going to get 30 years with the plea, he might as well take his chances and go to trial. Petitioner current attorney argues that this implies a willingness to plead guilty for a reduced sentence. To the extent any issues remain, Petitioner's current attorney requests a second hearing to clear up the matter if needed.

11

After considering the current record, the Court concludes that Petitioner has presented sufficient evidence to establish a reasonable probability that he would have accepted the plea agreements offered by the Government if he had been properly advised. First, the Court notes that Petitioner presented credible testimony at the evidentiary hearing that he would have accepted a plea if he had been properly advised. Specifically, at the evidentiary hearing, Petitioner acknowledged that he was engaging in drug sales on the day in question, and he testified that if Trial Counsel "would have explained to me more and told me that if I would have pleaded guilty I would have got a three-point level reduction and all the other stuff that come with it, I would have pleaded guilty instead of going to trial." (Evid. Hrg. Tr. at 13.) The Court notes that this testimony is consistent with Petitioner's pre-hearing affidavit, in which Petitioner stated that "during my first visit with [Trial Counsel] I advised counsel that I would be willing to accept a negotiated plea bargain to dispose of the case without jury trial." (Aff. of Pet. [Doc. #124-1].) In that same pre-hearing affidavit, Petitioner also stated that because Trial Counsel advised him that his sentence range "would remain 'the same' by plea of guilty or trial, I believed that pleading guilty or proceeding to trial would bring about the same results" and "if counsel would have advised me correctly concerning my sentencing ranges I would have vehemently requested a plea bargain that would [have] removed a 20 or 30 year sentence. I would have not proceeded to trial being perfectly aware that I would receive, mandatorily 20-years, and an advisory sentence starting at 30-years[,] if I had fully understood how I could have actually avoided such sentencing ranges . . . ." (Id.)

In finding this testimony credible, the Court acknowledges that Petitioner has made statements disclaiming liability, particularly as to Count Three, and contending that his brother

was willing to testify and accept liability. Even at the evidentiary hearing, Petitioner testified that prior to trial, "I knew that I was guilty of selling drugs on the video to another person, but not to the undercover." (Evid. Hrg. Tr. at 11.) Petitioner testified that he believed his brother's testimony would help him because his brother would testify that Petitioner did not sell the drugs to the undercover officer. (Evid. Hrg. Tr. at 26-27.) However, as noted above, the sale to the undercover officer related only to Count Three, not the other counts. In addition, it appears that Petitioner did not understand that he could be liable for his involvement in the undercover sale in Count Three where he did not personally participate in the hand-to-hand transaction with the undercover officer. In this regard, the Court also notes that the record reflects that Petitioner's last IQ test was below 70, and he apparently has comprehension difficulties either as a result of a mental disability or drug use or both, and his conflicting statements as to his liability appear to be influenced by his lack of understanding of the scope of potential liability on Count Three. Indeed, in his affidavit, Trial Counsel asserts that during their pre-trial preparation, Petitioner "never indicated that he was not guilty and that his brother/co-defendant alone was responsible for the crime. In fact, surveillance videos clearly show that the defendant and his brother were selling drugs in the common area of a public housing project." (Aff. [Doc. #132-1].) Similarly, at the evidentiary hearing, Trial Counsel testified that he did not move to sever the cases because this was not a case "where one party was pointing their finger at the other saying one was guilty and the other was not." (Evid. Hrg. Tr. at 42-43.) Thus, the Court concludes that Petitioner's statements do not indicate a lack of credibility or otherwise demonstrate that he would not have considered a plea offer if he had been properly advised.

13

In addition, the Court also acknowledges that Petitioner made statements prior to trial indicating his intent to proceed to trial. However, these statements also have to be viewed in the context of Trial Counsel's advice that the proposed plea offers would not have much effect on his sentence. Petitioner had, as he now acknowledges, virtually no chance of prevailing at trial, and the plea offers would both have substantially reduced his likely sentencing range under the Guidelines. However, the Government's own evidence reflects that this information was never communicated to Petitioner, given that Trial Counsel testified at the evidentiary hearing that he told Petitioner after going through the potential sentencing numbers that "the numbers weren't going to be that much different" and "he wasn't going to get much of a benefit out of any plea bargain" and it was "worth a roll of the dice" to go to trial at that point. (Evid. Hrg. Tr. at 40-44.) See also Day, 969 F.2d at 44 (holding that § 2255 could provide relief where trial counsel was ineffective by giving defendant substandard advice about his sentence exposure under the Sentencing Guidelines during plea negotiations, and noting that "[k]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty.").

The Court also notes that beyond Petitioner's own testimony and statements, the Government's evidence also provides additional support for the conclusion that there is a reasonable probability that Petitioner would have accepted a plea offer if he had been properly advised. Specifically, the Government's evidence reflects that prior to trial, Petitioner made an unsolicited statement to Trial Counsel's former office manager indicating that he was rejecting the second plea offer since he was going to be facing about 30 years either way. At the Evidentiary Hearing, Trial Counsel confirmed that this was his recollection as well. This

14

statement corroborates Petitioner's claim that he pled guilty because of counsel's advice, and also indicates his willingness to consider plea offers and his decision to reject the second plea offer because it would not provide any sentencing advantage as advised by Trial Counsel.

The Government contends that Petitioner has not shown prejudice because Petitioner's testimony was not specific as to which plea offer he would have accepted. However, where the plea offers were not accurately explained to him, it is difficult to fault Petitioner for not knowing what plea was available for him to accept. The Government also contends that Petitioner's submissions reflect that Petitioner believed he was not guilty. However, as noted above, Petitioner readily testified at the evidentiary hearing that he was involved in drug sales that day and that prior to trial he knew he was guilty of drug sales that were captured on video. Trial Counsel's affidavit likewise reflects that during their pre-trial preparation, Petitioner "never indicated that he was not guilty and that his brother/co-defendant alone was responsible for the crime." (Aff. [Doc. #132-1].) To the extent that Petitioner maintained that he was not liable for the undercover sale to the officer charged in Count Three, as discussed above, that appears to be a result of Petitioner's misunderstanding regarding the scope of his liability when he did not personally participate in the hand-to-hand transaction, and his decision to proceed to trial on that Count and the other Counts ultimately traces back to the advice of Trial Counsel that "he wasn't going to get much of a benefit out of any plea bargain" and it was "worth a roll of the dice" to go to trial at that point.

The Government also cites to Petitioner's Motion for a New Attorney [Doc. #37], in which he indicated an intent to go to trial. However, Petitioner's statement that he intended to go to trial was in a letter requesting new counsel because his first attorney was also at that

time representing Petitioner's father in similar state charges that potentially implicated Petitioner, and Petitioner wanted counsel without a conflict to represent him at trial. This letter requesting conflict-free counsel does not reflect that Petitioner was unwilling to consider plea offers. The Government also cites to Petitioner's *pro se* pre-sentencing memorandum, which included various sentencing arguments and also included the assertion that "Petitioner IS NOT GUILTY of the charge(s)" [Doc. #61 at 7]. However, at sentencing Petitioner explained that this filing was by a "jailhouse lawyer," and Petitioner effectively disclaimed the filing and it was not considered by the Court. (Sentencing Tr. [Doc. #96] at 3-4.) In addition, in his colloquy with the Court at sentencing, Petitioner did not contend that he was not guilty and instead acknowledged "I broke the law," and "I put myself in this predicament," but asked for a variance below 30 years, specifically requesting a sentence of 15 years. (Sent. Tr. at 41-42.)[5]

Finally, the Government cites to an affidavit submitted by Petitioner's brother, co-defendant Tamaurius Allen, stating that "[a]t no time during the occurrence of these events did Mr. Allen have any knowledge that drug distribution was occurring." This submission and Petitioner's related filing [Doc. #155] are inconsistent with Petitioner's admission of liability and would raise some concern for the Court. However, this affidavit was submitted as part of Petitioner's filing requesting relief under United States v. Simmons, and ultimately the Court cannot conclude that the submission of this affidavit as part of Petitioner's Simmons-related

---

[5] The Court also notes that prior to sentencing, Petitioner began attempting to provide substantial assistance to the Government, and even after the *pro se* sentencing memorandum was filed, the Government still moved to continue the sentencing [Doc. #63] to allow Petitioner to continue to cooperate.

16

filings means that Petitioner would not have accepted a plea if he had been properly advised, given the other evidence presented.

Ultimately, the undisputed evidence reflects that the evidence against Petitioner was overwhelming, that Petitioner was observed by law enforcement officers and/or videotaped engaging in drug transactions, and that, according to the Affidavit submitted by the Government, Petitioner did not indicate to Trial Counsel that he was not guilty and that his brother alone was responsible. Instead, it appears that Petitioner "knew that [he] was guilty of selling drugs on the video" to people other than the undercover officer, but misunderstood the scope of his liability on Count Three and mistakenly believed that his brother's testimony could potentially absolve him of liability for that transaction. In addition, it is undisputed that the Government provided Trial Counsel with two plea offers, but Trial Counsel advised Petitioner with regard to the plea offers that "the numbers weren't going to be that much different" and "he wasn't going to get much of a benefit out of any plea bargain" and it was "worth a roll of the dice" to go to trial at that point. It is also undisputed that under the first plea agreement, Petitioner would have faced a sentence of approximately 22 years at the low end of the Guidelines, rather than 30 years following a trial, and under the second plea agreement, Petitioner would have faced a sentence of approximately 16 years at the low end of the Guidelines, rather than 30 years following a trial. It is undisputed that this information was not conveyed to Petitioner, given that Trial Counsel confirmed at the evidentiary hearing that it was his understanding that Petitioner faced 30 years under the Guidelines whether he entered a plea or went to trial. It is also undisputed that almost immediately after meeting to discuss the second plea offer, Petitioner called Trial Counsel's office to confirm that he was

not accepting the second plea offer because if he was facing 30 years anyway under the plea agreement, he might as well take his chances and go to trial. Finally, Petitioner credibly testified at the evidentiary hearing that he would have taken a plea if the plea offers had been properly explained to him. This appears to be the scenario contemplated by the Supreme Court in <u>Lafler</u>. As to the single point disputed by the Government, the Court finds that the evidence is sufficient to reflect a reasonable probability that Petitioner would have accepted the plea if he had been properly advised, based on Petitioner's testimony and the evidence in the record discussed above.

> With respect to the appropriate remedy, the Supreme Court held in <u>Lafler</u> that:
>
> Sixth Amendment remedies should be "tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." <u>United States v. Morrison</u>, 449 U.S. 361, 364, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981). Thus, a remedy must "neutralize the taint" of a constitutional violation, <u>id.</u>, at 365, 101 S.Ct. 665, while at the same time not grant a windfall to the defendant or needlessly squander the considerable resources the State properly invested in the criminal prosecution. <u>See</u> <u>Mechanik</u>, 475 U.S., at 72, 106 S.Ct. 938 ("The reversal of a conviction entails substantial social costs: it forces jurors, witnesses, courts, the prosecution, and the defendants to expend further time, energy, and other resources to repeat a trial that has already once taken place; victims may be asked to relive their disturbing experiences").
>
> The specific injury suffered by defendants who decline a plea offer as a result of ineffective assistance of counsel and then receive a greater sentence as a result of trial can come in at least one of two forms. In some cases, the sole advantage a defendant would have received under the plea is a lesser sentence. This is typically the case when the charges that would have been admitted as part of the plea bargain are the same as the charges the defendant was convicted of after trial. In this situation the court may conduct an evidentiary hearing to determine whether the defendant has shown a reasonable probability that but for counsel's errors he would have accepted the plea. If the showing is made, the court may exercise discretion in determining whether the defendant should receive the term of imprisonment the government offered in the plea, the sentence he received at trial, or something in between.

18

> In some situations it may be that resentencing alone will not be full redress for the constitutional injury. If, for example, an offer was for a guilty plea to a count or counts less serious than the ones for which a defendant was convicted after trial, or if a mandatory sentence confines a judge's sentencing discretion after trial, a resentencing based on the conviction at trial may not suffice. See, e.g., Williams, 571 F.3d, at 1088; Riggs v. Fairman, 399 F.3d 1179, 1181 (C.A.9 2005). In these circumstances, the proper exercise of discretion to remedy the constitutional injury may be to require the prosecution to reoffer the plea proposal. Once this has occurred, the judge can then exercise discretion in deciding whether to vacate the conviction from trial and accept the plea or leave the conviction undisturbed.

Lafler, 566 U.S. at 170-71; see also Randall v. United States, No. 3:13CV154, 2014 WL 4311043 (W.D.N.C. Sept. 2, 2014) ("The court will, therefore, direct the government to reoffer the First Plea Agreement. In the event petitioner accepts that offer, the court will then vacate the Judgment, direct Pretrial Services to submit a revised PSR (and therein take into consideration petitioner's accomplishments and other events during incarceration), and resentence petitioner.").

In the present case, the Court invited the Government to address what remedy would be appropriate in this case if relief were granted, but the Government did not address that issue in its Supplemental Brief. In light of the evidence presented, it appears that the appropriate remedy would be to direct the Government to re-offer both plea agreements, and schedule this matter for a hearing. At the hearing, Petitioner would have the opportunity to enter a plea pursuant to either plea agreement, and if he does so, the prior Judgment would be vacated, and Petitioner would face sentencing on his guilty plea pursuant to that plea agreement.[6]

---

[6] In light of this determination, it appears that Petitioner's other claims should be denied. With respect to Petitioner's claim pursuant to United States v. Simmons, that claim is without merit for the reasons set out in the Court's prior Order.

IT IS THEREFORE RECOMMENDED that Petitioner's Motion [Doc. #120] be granted to the extent that the Government be directed to re-offer both plea agreements, and that this matter be set for a hearing at which Petitioner would have the opportunity to enter a plea pursuant to either plea agreement, and if he does so, the prior Judgment would be vacated, and Petitioner would face sentencing on his guilty plea pursuant to that plea agreement. Petitioner's Motion should otherwise be denied.

This, the 16th day of January, 2018.

/s/ Joi Elizabeth Peake
United States Magistrate Judge